## Piscataqua Exchange Bank *v.* Carter.

Where a bank had kept posted a notice that all indorsers of notes to the bank would be required to waive demand and notice, and a note was indorsed to the bank by one who had been for several years a customer of the bank, but no such waiver was written upon the note; it was *held*, that parol evidence of this usage of the bank, and of the assent of the indorser, could not be shown, to change the contract implied in law from the indorsement.

To charge the indorser, the note must be presented to the maker for payment on the last day of grace, and notice of such demand, and that the note was not paid, must be given to the indorser.

This is an action of assumpsit against the defendant, as indorser of a note, of which the following is a copy:

"Portsmouth, May 3, 1848.

For value received I promise to pay Benj. Carter, Jr., or order, two hundred seventy-seven dollars and eighty-one cents, in ninety days, and grace.

Loring Wing."

This note was discounted by the plaintiffs on the 6th of the same May, and indorsed by the defendant, to whom the money was paid. The maker of the note, L. Wing, was then, and at the maturity of the note, of the firm of Wing and Thompson. Before the maturity of the note Wing and Thompson failed, and this fact was known to the defendant. Wing continued to reside at Portsmouth, where the firm had transacted its business, till after the note became payable. The defendant, at the time of the discount and maturity of the note, kept his bank account with the plaintiffs, and for several years preceding had had occasional discounts there.

On the evening of the 4th of August, 1848, about 7 o'clock, as the defendant was going out of his store, he met H. Lowd, the messenger of the bank in Portsmouth, including the plaintiff, on the steps of the store, and enquired of him if he had given Wing a notice, within a

Piscataqua Exchange Bank *v.* Carter.

few days, of a note becoming due at the Piscataqua Exchange Bank. Said Lowd said he had, and further said he had notified them of another note at another bank, of Capt. Day's, but they would not pay. The defendant replied he was not sure of that, to which Lowd said it was nothing to him; he only did the bank business when given to him.

On the morning of the 5th of August, 1848, the plaintiff placed said note in the hands of a notary public, who demanded payment of the maker; and it not being paid, on the same day notified the defendant of said demand of the maker, and that the maker had not paid said note.

On the 5th of August, 1848, about 12 o'clock at noon, the cashier of the bank sent for the defendant, who went into the bank, and the cashier handed him the note and a pen, and asked the defendant to write upon the back of the note, above his name then on the note, the words, " demand and notice waived." The defendant asked if the note was not out on the fourth. The cashier then inquired if that date, referring to the note, was not the 8th, to which the defendent replied that it was the third. The cashier asked the defendant if he would pay the note, and the defendant said he would not, to which the cashier replied, I will protest it; to which the defendant said, very well, and left the bank.

At the time of the discount of this note, and for about a year before, there was posted at the desk upon the counter, where the business of the bank was transacted, a notice in the following words:

" NOTICE.

On all notes offered for discount at this bank, and payable in Portsmouth, the indorser will be required to waive demand and notice.          SAMUEL LORD, *Cashier*."

If upon these facts the defendant is liable as indorser, judgment is to be rendered for the plaintiff, otherwise for the defendant.

*W. H. Y. Hackett,* for the plaintiff.

*J. W. Emery,* for the defendant.

BELL, J. It is unnecessary to discuss the power of banks or other business companies, to establish usages at variance with the law which governs the rest of the community, or the question how far those who deal with them are to be assumed to know and to be bound by such usages in the present case.

It seems by no means expedient for courts to give countenance to such usages, inasmuch as they are calculated to destroy the uniformity of the law in the different parts of the State, and as our largest towns are but inconsiderable places of business, to allow a different law in every village; and in the language of C. J. *Richardson,* in *Leavitt* v. *Simes,* 3 N. H. 17, it deserves serious consideration whether the admission of testimony to show the usage and his assent to it, is not to admit parol evidence to vary the terms of a written contract.

If the usage set up in the present case, that indorsers of notes offered for discount should be required to waive demand and notice, is assumed to be valid, and to be binding upon all who had occasion to transact business with the plaintiffs; yet it was a rule, established by the plaintiffs for their own convenience and security, and which they were at liberty to waive, and in this instance the usage was neglected, and what the bank was accustomed to require to be done, was not in fact done. Demand and notice were not in fact waived.

The utmost effect which could be claimed for the usage set up in this case would be to constitute an agreement on the part of the defendant that he would waive the demand and notice which the law ordinarily requires, in order to his being bound as indorser—a parol agreement made at the time of the indorsement. Now the question whether a parol agreement to waive demand and notice made at the time of indorsement, can be given in evidence,

was made a question in the case of *Barry* v. *Morse*, 3 N. H. 132; and it was held that the case came within the general prohibition of the law, that parol evidence should not be admitted to vary the effect of a written contract. The contract between the indorser and the indorsees of negotiable paper, proved by the signature of the indorser on the back of the note, is a written contract; and it cannot be varied by evidence of a verbal agreement between the parties at the time of the indorsement. Giving, then, to the supposed usage all the effect of which it is capable, it cannot affect the rights of the parties in this case.

Allusion is made in the argument to some supposed usage relating to the demand on the maker, or some previous notice as a substitute for a demand, but none such is stated, nor any facts from which any could be inferred.

The liability of the defendant, then, depends, not on the usages of the bank, but upon the general rules of the common law; and upon the case, as stated, it does not appear that there was any demand upon the maker of the note on the third day of grace, which is held to be necessary, in the case of *Leavitt* v. *Simes*, before cited; *Dennet* v. *Walker*, 7 N. H. 199. The note became due August 1–4. There is no evidence of any demand of the maker on the 4th, nor of any notice to the maker that it would become due on that day, if that were of any importance. The statement goes no further than that Lowd told Carter that he had, within a few days, given notice to Wing of a note becoming due from him to the Piscataqua Exchange Bank. Such a statement was not evidence of anything; but if it were it proved nothing as to the time at which the maker was called upon to pay. There is no evidence that proper notice was given to the indorser that such demand had been made, and that the note had not been paid by him, and the holder would look to the indorser for payment. The indorser is consequently discharged from liability, and there must be judgment for the defendant.